[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-15898

_____

D. C. Docket No. 01-06530-CV-JEM

PRIMERA IGLESIA BAUTISTA HISPANA OF BOCA RATON, INC.,
a Florida corporation,
AUGUSTO PRATTS,
DAVID PRATTS,

Plaintiffs-Counter-
Defendants-Appellants
Cross-Appellees,

versus

BROWARD COUNTY,
a political subdivision of the State of Florida,

Defendant-Counter-
Claimant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(June 1, 2006)**

Before BIRCH and MARCUS, Circuit Judges, and MILLS[*], District Judge.

MARCUS, Circuit Judge:

Primera Iglesia Bautista Hispana of Boca Raton, Inc. ("Primera" or "the Church") appeals from the entry of final judgment, after a bench trial, in favor of the defendant, Broward County ("the County"). The district court found that the County did not violate section 2(b)(1) (the "Equal Terms Provision") of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc(b)(1), by denying Primera a zoning variance. Primera also appeals the district court's conclusion that Primera, as a corporation, lacked standing to bring a section 1983 claim for the violation of its constitutional rights under the Due Process, Equal Protection, and Free Exercise Clauses. After careful review, we reverse the dismissal of Primera's section 1983 claims because Primera, as an incorporated religious organization, both has standing in the case and has stated a claim under the Constitution and laws of the United States. We affirm, however, the district court's final judgment entered for the County on the Church's RLUIPA claims.

I.

[*] Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

The essential facts developed at trial are these. Use and development of land in unincorporated Broward County is regulated by the Broward County Zoning Code ("BCZC"). Article XIV of the BCZC sets forth the regulations applicable to land designated A-1 Agricultural Estate. In July 1997, the County amended Article XIV of the BCZC to require "a minimum distance of one thousand (1,000) feet" between nonagricultural, nonresidential uses in the A-1 district (the "Separation Requirement"). BCZC § 39-245(9)(a). The stated purpose of these regulations was "to protect, preserve and enhance the rural character and lifestyle of existing low denisity areas and agricultural uses and comply with the [relevant portions of the Comprehensive Plan]." BCZC § 39-246. Places of worship are permitted in the A-1 zoning district, but like all nonagricultural, nonresidential uses, they are subject to the Separation Requirement. BCZC §§ 39-245, 39-249.

Primera is a Hispanic Baptist congregation affiliated with the Southern Baptist Convention and serving Hispanic congregants in northern Broward County, Florida.[1] In December of 1997, Primera purchased a residential property

---

[1] In addition to Primera, the complaint named two individuals, David Pratts and Augusto Pratts, as plaintiffs. Before the trial, the district court dismissed the individual plaintiffs for lack of standing. The individuals do not appeal their dismissal from this lawsuit.

located at 7450 Lyons Road in unincorporated northern Broward County ("the Property"). The warranty deed conveying the Property to Primera unambiguously states that the Property is subject to zoning ordinances and other restrictions and prohibitions. The Church was represented by counsel in the purchase. The Property is approximately one acre in size with a single family residence situated thereon. It is located in the A-1 Agricultural Estate zoning district of Broward County.

The Property is within 1,000 feet of other nonresidential, nonagricultural uses. Among these properties, several were annexed into the City of Coconut Creek before the County enacted the Separation Requirement. Once annexed, those lands fell outside the A-1 zoning district and were not subject to the Separation Requirement. At trial, Primera presented no evidence that any property owner has obtained a variance from the Separation Requirement.

Of particular importance to this appeal is the Broward County Preparatory School ("the School"), which is located within 1000 feet of the Church and comprises some seventy acres of land. Coconut Creek annexed most of the School's land from unincorporated Broward County before the County enacted the Separation Requirement. But the School later acquired an additional ten-acre parcel of land adjacent to its main grounds, located in unincorporated Broward

4

County and zoned A-1. In 2001, upon the School's application, the County rezoned the ten-acre parcel from A-1 to I-1, Institutional and Educational District, which does not impose any distance requirements. There is no evidence that the School used the ten-acre parcel for any nonresidential, nonagricultural use before the rezoning, but afterwards the School built a performing arts center and auditorium on the land.

After Primera purchased the Property, it hired an architect to develop a site plan to renovate the house into a place of worship and submitted those plans to the County. A County official informed Primera that the Separation Requirement prohibited any nonagricultural, nonresidential use of the property, and advised them to seek a zoning variance. Primera applied for a variance in March 1998, but at an April 1998 hearing, it withdrew the request after its attorney informed the Church that there was no quorum of the Board of Adjustment ("the Board"), and that it should try instead to work out any opposition from its neighbors. When the Church's pastor, Augusto Pratts, spoke to the neighbors, he learned that some objected to Primera's variance request. And at a hearing in June 1998, neighbors voiced substantial opposition to Primera's renewed request. The Board denied the variance, offering three reasons: (1) the Separation Requirement was necessary to maintain the primary purpose of the agricultural district; (2) Primera created its

5

own hardship by buying an under-zoned property; and (3) Primera's request did not meet the criteria for a variance set forth in the Zoning Code § 39-40.[2]

In spite of the Board's decision, Primera continued to use the Property for various prayer meetings and church services. In response, in 1999, the County issued Primera a Notice of Violation for "illegally conducting church services (by admission)" in a residential structure in violation of the zoning code, and set a hearing before the Board. At the hearing, on October 28, 1999, the Board found that Primera, by admission, had illegally used the residential structure to conduct church services.

Primera then sued the County in state court under the Florida Land Use and

---

[2] The BCZC provides that, in determining whether to grant a variance, the Board shall determine whether the applicant has met the following criteria:

> (1) That there are unique and special circumstances or conditions applying to the property in question, or to the intended use of the property, that do not apply generally to other properties in the same district; (2) That any alleged hardship is not self-created by any person having an interest in the property or is the result of mere disregard for, or ignorance of, the provisions of the Code; (3) That strict application of the provisions of the Code would deprive the petitioner of reasonable use of the property for which the variance is sought; (4) That the variance proposed is the minimum variance which makes possible the reasonable use of the property; (5) That the granting of the variance will be in harmony with the general intent and purpose of the Code and that such variance will not be injurious to the area involved or otherwise detrimental to the public welfare; (6) That there exists changed or changing circumstances which make approval of the variance appropriate.

BCZC § 39-40.

Environmental Dispute Resolution Act, Fla. Stat. § 761.03 (2004), challenging the County's enforcement of the Separation Requirement. However, the parties reached a mediated resolution whereby Primera agreed to submit a new application to the Board to request a variance. Primera, with the assistance of the Zoning Code Services Division ("ZCSD") staff, submitted yet another variance application that proposed additional use restrictions to mitigate any possible negative effects. This time, the ZCSD staff recommended approval to the Board on the following grounds: (1) the new site plan mitigated the negative effects of the variance; (2) the hardship was not self-created;[3] and (3) the operation of the Church would not negatively affect traffic in the area.

The Board held another hearing on Primera's request, at which time Primera's neighbors again voiced opposition and presented photographs and a video of Primera's past use of the Property, depicting, among other things, garage sales and religious services. The Board again voted to deny the variance because "granting the variance would not be in harmony with the community or the general intent or purpose of the Code and . . . such variance would be injurious to the area involved and it would be otherwise detrimental to the public welfare by virtue of

---

[3] The ZCSD staff changed its position on this point because of new information that Primera had relied to its detriment on the seller's representations about the Property's zoning.

7

the traffic created."

Nevertheless, Primera continued to use the Property for worship services, prompting still more complaints to the County, which resulted in the ZCSD issuing still another Notice of Violation on September 12, 2000. Thereafter, Primera stopped using the Property for worship services. Notably, Primera never sought to have the Property re-zoned or annexed into the nearby municipality of Coconut Creek.

In April 2001, Primera filed this lawsuit against the County in the United States District Court for the Southern District of Florida, challenging the County's decision denying Primera a variance. Primera's Amended Complaint alleged three counts. Count I sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for violation of Primera's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. Count II claimed that the County's zoning decisions violated: RLUIPA section 2(a), 42 U.S.C. § 2000cc(a) (the "Substantial Burden provision"), by imposing a substantial burden on Primera's exercise of its religious freedoms; RLUIPA section 2(b)(1), 42 U.S.C. § 2000cc(b)(1) (the "Equal Terms provision"), by treating Primera on less than equal terms with other nonreligious assemblies; RLUIPA section 2(b)(2), 42 U.S.C. § 2000cc(b)(2) (the "Nondiscrimination provision"), by discriminating against

Primera on the basis of religion or religious denomination; and, RLUIPA section 2(b)(3)(B), 42 U.S.C. § 2000cc(b)(3)(B) (the "Unreasonable Limitation provision"), by imposing regulations that unreasonably limit religious assemblies within the A-1 zoning district.[4]  Finally,

---

[4]  The full text of RLUIPA section 2, 42 U.S.C. § 2000cc, reads as follows:

(a) Substantial burdens

(1) General rule

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

(A)  is in furtherance of a compelling governmental interest; and
(B)  is the least restrictive means of furthering that compelling governmental interest.

(2) Scope of application

This subsection applies in any case in which--

(A)  the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B)  the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C)  the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

count III claimed a violation of a corollary state statute, the Florida Religious

Freedom Restoration Act of 1998 ("FRFRA").

After a three day bench trial the district court ruled in favor of the County

on all counts, making extensive findings of fact and conclusions of law. As an

initial matter, the district court determined that Primera, as a corporation, lacked

standing to pursue a section 1983 action to challenge the County's zoning

decisions, and therefore dismissed Primera's section 1983 claim. As for the

Religious Land Use and Institutionalized Persons Act claims, the district court

held that: (1) Primera failed to establish a violation of RLUIPA's Substantial

---

(b) Discrimination and exclusion

    (1) Equal terms

    No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

    (2) Nondiscrimination

    No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

    (3) Exclusions and limits

    No government shall impose or implement a land use regulation that--

        (A)    totally excludes religious assemblies from a jurisdiction; or

        (B)    unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

Burden provision because the Separation Requirement predated Primera's acquisition; RLUIPA does not mandate that municipalities allow residents to operate religious institutions wherever they please; and the County did not prohibit all religious uses, but merely imposed a 1000 foot separation requirement; (2) Primera did not present prima facie evidence that the County violated RLUIPA's Equal Terms provision because the Separation Requirement is facially neutral as between religious and nonreligious assemblies and institutions, and the Separation Requirement is applied equally to nonreligious assemblies and institutions; and, finally, (3) the County's Separation Requirement did not constitute an unreasonable limitation on religious exercise in violation of RLUIPA. The court also concluded that, since the standard for finding a violation of FRFRA and RLUIPA's substantial burden provision are identical, there was no violation of the FRFRA. Primera does not appeal from that determination.

## II.

On appeal, Primera first claims that the district court committed reversible error when it dismissed, for lack of standing, Primera's section 1983 claims alleging that the County deprived Primera of its constitutional rights. We review de novo the district court's conclusions of law. Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health and Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000),

11

and find that the dismissal of the section 1983 claims was erroneous for several reasons and requires reversal.

It is by now axiomatic that "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action. In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004) (internal quotation marks omitted). The Supreme Court's standing jurisprudence "contains two strands: Article III standing, which enforces the Constitution's case or controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." Id. at 11-12 (quotation marks omitted). Only Article III standing is at issue in this case.

To demonstrate Article III standing, a "plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." Id. As we have explained, this requires a plaintiff to show "(1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling." Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994) (en banc).

"[T]o establish an injury in fact, [a plaintiff] must first demonstrate that the [defendant] has invaded some 'legally protected interest' of his." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 980-81 (11th Cir. 2005). A "legally cognizable injury" requires infringment of "an interest . . . protected by statute or otherwise." Id. (internal quotation marks omitted) (quoting Cox Cable Commc'ns, Inc. v. United States, 992 F.2d 1178, 1182 (11th Cir.1993)). That "interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." Id. (internal quotation marks omitted) (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 772 (2000)). We have held that a zoning restriction on property use constitutes an injury in fact. Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1224 (11th Cir. 2004). Primera plainly has suffered an actual injury: it is barred from assembling for religious worship on the Property.

Moreover, the remaining two standing requirements also are clearly present. The Church's injury is fairly and easily traceable to the zoning ordinance because applying the ordinance to the Church directly and expressly limits Primera's use of the Property for religious worship services. See id.; Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. E.P.A., 386 F.3d 1070, 1085 (11th Cir. 2004) (holding that the "fairly traceable" element is met where continued injury would

13

result if the challenged conduct persisted). Finally, the injury would be redressed by a ruling in Primera's favor: the church would be free to use the Property for religious services. See Midrash, 366 F.3d at 1224. Thus, to the extent the district court grounded its dismissal on Primera's lack of standing, it erred.

The district court's order is sufficiently ambiguous as to suggest that when it employed the doctrine of "standing" it really meant to connote Primera's failure to state a claim under 42 U.S.C. § 1983. If that was the basis of the order, however, this too would be error because Primera stated a claim for the violation of its constitutional rights.

The district court based its dismissal on language drawn from our opinion in L.S.T., Inc. v. Crow, 49 F.3d 679 (11th Cir. 1995), where a panel of this Court observed that "[a] corporation is not a 'citizen' entitled to the privileges and immunities secured by federal law for purposes of § 1983." Id. at 682-83 n.6 (citing Hague v. Comm. for Indus. Org., 307 U.S. 496, 514 (1939) ("Natural persons, and they alone, are entitled to the privileges an immunities which section 1 of the Fourteenth Amendment secures for 'citizens of the United States.'")). But Primera's section 1983 claims are not based on the privileges and immunities incident to its citizenship; they are based on its rights as a "person." And this distinction makes all the difference.

14

By its terms, section 1983 provides a cause of action for "person[s] within the jurisdiction" who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."  42 U.S.C. § 1983.  We have clearly and repeatedly held that corporations are "persons" within the meaning of section 1983.  See, e.g., Fla. Right to Life, Inc. v. Lamar, 273 F.3d 1318, 1323 (11th Cir. 2001) (corporation may sue under section 1983 to vindicate its First and Fourteenth Amendment rights); Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1526 (11th Cir. 1993) (holding that a religious corporation has standing to bring section 1983 claim to vindicate First Amendment rights); see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 547 (1993) (granting church corporation relief in § 1983 suit to vindicate Free Exercise rights).

Moreover, corporations possess Fourteenth Amendment rights of equal protection, due process, and, through the doctrine of incorporation,[5] the free exercise of religion. See First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 780 n.15 (1978) ("It has been settled for almost a century that corporations are persons

_____

[5] See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) ("The fundamental concept of liberty embodied in [the Fourteenth] Amendment embraces the liberties guaranteed by the First Amendment.").

15

within the meaning of the Fourteenth Amendment."); Grosjean v. Am. Press Co., 297 U.S. 233, 244 (1936) ("[A] corporation is a 'person' within the meaning of the equal protection and due process of law clauses . . . ."). Although the rights of corporate persons and natural persons are not entirely coextensive, see First Nat'l Bank v. Bellotti, 435 U.S. 765, 778 n.14 (1978) ("Certain 'purely personal' guarantees, such as the privilege against compulsory self-incrimination, are unavailable to corporations and other organizations because the 'historic function' of the particular guarantee has been limited to the protection of individuals."), corporations plainly possess the rights the Church asserted here: due process, equal protection, and the free exercise of religion, see Grosjean, 297 U.S. at 244; Lukumi, 508 U.S. at 547; Church of Scientology, 2 F.3d at 1526; cf. Bellotti, 435 U.S. at 780 ("Freedom of speech and the other freedoms encompassed by the First Amendment always have been viewed as fundamental components of the liberty safeguarded by the Due Process Clause, and the Court has not identified a separate source for the right when it has been asserted by corporations." (citations omitted)).

Accordingly, we easily conclude that Primera, as an incorporated religious organization, stated a section 1983 claim for the alleged violation of its equal protection, due process, and free exercise rights. The district court, therefore,

16

erred in dismissing Primera's constitutional claims.

The County nevertheless urges us to affirm the dismissal of Primera's §1983 suit by applying "the well-established rule that where, as here, both constitutional and statutory claims arising from the same set of operative facts are asserted, only the statutory issues should be decided." (Appellee's Br. at 15.) The County cites a variety of decisions for the unremarkable proposition that a case should be decided on statutory, rather than constitutional grounds, whenever possible -- Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105 (1944); Konikov v. Orange County, 410 F.3d 1317, 1319 n.1 (11th Cir. 2005); Communist Party of Ind. v. Whitcomb, 414 U.S. 441, 452 (1974).

The County is surely correct that the Supreme Court and this Court have long held that where a party raises both statutory and constitutional arguments in support of a judgment, a court should first consider whether the plaintiff is entitled to full relief under a statute, and if so, should not reach the constitutional issue. See, e.g., McLaughlin, 323 U.S. at 105 ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."); Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (explaining that the Court avoids constitutional

17

questions "if a case can be decided [by] a question of statutory construction or general law"); Konikov, 410 F.3d at 1319 n.1. But if a plaintiff is not entitled to statutory relief (as is the case here), then the constitutional claims are unavoidable and the federal court must address their merits. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); Metropolitan Life v. Lockette, 155 F.3d 1339, 1341 (11th Cir. 1998) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." (internal quotation marks omitted)).

The County, in a corollary argument, invites us to hold that, because RLUIPA's protections equal or exceed the constitutional protections Primera asserts, Primera's failure to prove its constitutional claims necessarily follows from its failure to prove a statutory violation of RLUIPA. We decline the County's invitation to address the merits of this argument, because the district court did not make any findings of fact specifically related to Primera's constitutional claims, and we are unwilling to make such findings in the first instance. As we have observed elsewhere, "[t]he reviewing court oversteps the bounds of its duty . . . if

it undertakes to duplicate the role of the lower court. . . . '[A]ppellate courts must constantly have in mind that their function is not to decide factual issues de novo.'" Holton v. City of Thomasville Sch. Dist., 425 F.3d 1325, 1351 (11th Cir. 2005) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123 (1969)). We are reluctant to reach out to decide an important constitutional question before the district court has made any findings of fact or drawn any conclusions of law on this issue.

Accordingly, we hold that Primera, as an incorporated religious organization, stated a section 1983 claim for violation of its equal protection, due process, and free exercise rights. Because the district court erred in dismissing Primera's constitutional claims, we reverse that order and remand for further proceedings consistent with this opinion.

## III.

Primera also argues the district court erred in concluding that the County did not violate RLUIPA's Equal Terms provision. According to Primera, the evidence at trial established that the County treated Primera on less than equal terms with the Broward Preparatory School. Primera assigns three basic errors: first, the district court improperly held that the School and Primera are not similarly situated; second, the district court failed to recognize that "the County's

19

differing treatment toward [Primera and the School is] simply inexplicable," from which one must infer a hostility to religion; and finally, the district court failed to consider that the County applied to Primera a separation requirement that "was never intended to apply to that area," as evidenced by the County's differential treatment of the School. Although Primera styles these as separate arguments, in fact each is based on the premise that by comparing Primera's treatment with the School's, the district court necessarily should have found unequal treatment in violation of the Equal Terms provision of the statute. We are unpersuaded.

RLUIPA's Equal Terms provision states that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). This statutory command "requir[es] equal treatment of secular and religious assemblies [and] allows courts to determine whether a particular system of classifications adopted by a city subtly or covertly departs from requirements of neutrality and general applicability." Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1232 (11th Cir. 2004) (emphasis added).

There are four elements of an Equal Terms violation: (1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious

20

assembly or institution.[6] 42 U.S.C. § 2000cc(b)(1); see Midrash, 366 F.3d at

1232. Under the statute, the plaintiff bears the initial burden of "produc[ing] prima

facie evidence to support a claim alleging a[n Equal Terms] violation." 42 U.S.C.

§ 2000cc-2(b).  If the plaintiff meets its initial burden, "the government . . . bear[s]

the burden of persuasion on any element of the claim." Id.[7]  We have also held that

a violation of the Equal Terms provision is not necessarily fatal to the land use

---

[6] We have defined an "assembly" as "a company of persons collected together in one place and usually for some common purpose (as deliberation and legislation, worship, or social entertainment)," and an "institution" as "an established society or corporation: an establishment or foundation especially of a public character." Konikov v. Orange County, Fla., 410 F.3d 1317, 1325 (11th Cir. 2005) (internal quotation marks omitted).  Although the statute does not define the term "religious," we give this common term it its natural meaning: "relating to that which is acknowledged as ultimate reality: manifesting devotion to and reflecting the nature of the divine or that which one holds to be of ultimate importance." Webster's Third New International Dictionary (2002); see also Nat'l Coal Ass'n v. Chater, 81 F.3d 1077, 1081 (11th Cir. 1996) ("Terms that are not defined in the statute . . . are given their ordinary or natural meaning.").  The statute defines a "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has a[] . . . property interest in the regulated land." 42 U.S.C. § 2000cc-5(5).

[7] The statute's burden shifting provision states:

(b) Burden of persuasion

If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2(b).

regulation, Midrash, 366 F.3d at 1231-35, but "a violation of § (b)'s equal treatment provision . . . must undergo strict scrutiny." Id. at 1232. Under that rubric, the offending conduct may be upheld if the defendant establishes that the conduct employs a narrowly tailored means of achieving a compelling government interest. Id. (citing Lukumi, 508 U.S. at 546).

The parties agree (and the record is undisputed) that Primera is a religious assembly subject to a land use regulation, so the first two elements are readily satisfied. The dispute on appeal thus concerns whether Primera met its initial burden to produce evidence supporting the last two elements of the claim: that the land use regulation treats the religious assembly on less than equal terms with a nonreligious assembly or institution. We review de novo the district court's conclusions of law, including its interpretation of a statute. Dysert v. U.S. Sec'y of Labor, 105 F.3d 607, 609 (11th Cir. 1997).

Based on a review of our case law construing the Equal Terms provision and reviewing closely related Supreme Court precedent arising under the Free Exercise Clause of the First Amendment, we can discern at least three distinct kinds of Equal Terms statutory violations: (1) a statute that facially differentiates between religious and nonreligious assemblies or institutions; (2) a facially neutral statute that is nevertheless "gerrymandered" to place a burden solely on religious,

as opposed to nonreligious, assemblies or institutions; or (3) a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious assemblies or institutions. We discuss each in turn and conclude that on this record none have been established.

In Midrash, we confronted the first kind of statutory Equal Terms violation -- facial discrimination. There, the zoning ordinance under consideration created a zoning district in which certain non-religious assemblies and institutions were permitted, but religious assemblies were prohibited. Midrash, 366 F.3d at 1230-31. A panel of this Court held that the ordinance facially violated RLUIPA's Equal Terms provision, and struck the ordinance down after determining that it failed strict scrutiny review. Midrash, 366 F.3d at 1231-35. Here, Primera concedes, and we agree, that the zoning provisions in question -- the Separation Requirement, BCZC § 39-246(9)(a), variance provisions, id. at §§ 39-35 - 39-44, and rezoning provisions, id. at §§ 39-24 - 39-32 -- are facially neutral and therefore do not constitute a facial Equal Terms statutory violation.

The second manner in which a law could violate the Equal Terms provision's "requirements of neutrality and general applicability," Midrash, 366 F.3d at 1232, may be exemplified by the Supreme Court's decision in Lukumi, which examined the constitutionality of a facially neutral law that nevertheless

23

targeted religion through a "religious gerrymander."[8]  508 U.S. at 535.  The City of

Hialeah ordinances at issue in Lukumi had the effect of proscribing ritualistic

animal sacrifice by adherents of the Santeria religion, while at the same time

permitting animal slaughter for other religious or secular purposes.  The Supreme

Court looked to the text of the challenged ordinances and concluded that they were

"drafted in tandem to achieve [the] result" that "almost the only conduct subject to

[the challenged ordinances was] the religious exercise of Santeria church

members." Id.  This careful drafting of otherwise facially neutral classifications

essentially constituted a religious "gerrymander" that departed from principles of

neutrality because it revealed that the ordinances "had as their object the

suppression of religion." Id. at 542.   The Supreme Court also held that the

ordinances were not generally applicable because they pursued the city's interests

only against conduct motivated by religious belief. Id. at 544-45.  Accordingly, the

Court employed strict scrutiny review to strike down the ordinances as violating

the Free Exercise Clause of the First Amendment, determining that they were not

---

[8] To "gerrymander" is "[t]o divide (an area) into political units in an unnatural and unfair way with the purpose of giving special advantages to one group." Webster's Third New International Dictionary 952 (2002).   In 1812, "the notoriously outrageous political districting in Massachusetts . . .  gave the gerrymander its name--an amalgam of the names of Massachusetts Governor Elbridge Gerry and the creature ('salamander') which the outline of an election district he was credited with forming was thought to resemble." Vieth v. Jubelirer, 541 U.S. 267, 274 (2004) (citing Webster's New International Dictionary 1052 (2d ed.1945)).

24

narrowly tailored to accomplish a compelling government interest.[9] Id. at 546.

Thus, a religious "gerrymander" that departs from basic principles of neutrality may also support a RLUIPA Equal Terms violation.   To prove this kind of statutory violation, Primera would have to show that the challenged zoning regulation separates permissible from impermissible assemblies or institutions in a way that burdens "almost only" religious uses.  But Primera presented no such evidence here, and our review of the local zoning ordinances at issue reveals that they were not in the slightest degree "gerrymandered" to burden only religious uses.  Indeed, the County's 1000-foot Separation Requirement applies generally to all non-agricultural, non-residential uses without regard to religion. See BCZC § 39-246(9)(a).  Owners may avoid the separation requirement only by requesting a variance or rezoning; there are no special carve-outs or exceptions made for for non-religious land uses. Id. at §§ 39-35 - 39-44, and §§ 39-24 - 39-32.  The zoning code provisions setting forth criteria for variances and rezoning are likewise neutral and generally applicable. Id.  Moreover, all of the zoning ordinances at issue were enacted before Primera purchased the Property, further undermining

---

[9] Although in Employment Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 877-90 (1990), the Supreme Court, interpreting the Free Exercise Clause, held that a neutral law of general applicability is not subject to strict scrutiny even if the law has the incidental effect of burdening religious exercise, the Lukumi court applied strict scrutiny precisely because it found the statute covertly departed from principles of neutrality and general applicability, thereby placing it outside the ambit of the Smith rule.  Lukumi, 508 U.S. at 546.

25

any suggestion that the zoning code "target[ed] Primera's lesser known religious sect." Accordingly, the record is abundantly clear that Primera failed to produce any evidence that the County violated RLUIPA's Equal Terms provision by engaging in a religious "gerrymander."

A third kind of statutory Equal Terms violation would arise in the case of discriminatory application of a facially neutral, generally applicable statute. See Konikov, 410 F.3d at 1327-29 (holding that discriminatory application of a facially neutral statute violates RLUIPA's Equal Terms provision); cf. Lukumi, 508 U.S. at 532 ("At a minimum, the protections of the Free Exercise Clause pertain if the law at issue . . . regulates or prohibits conduct because it is undertaken for religious reasons."). Primera essentially claims this kind of as-applied Equal Terms violation is evident because the County rezoned the Broward County Preparatory School's property, while, at the same time, it denied Primera's request for a variance. The Church further claims that under our decision in Midrash, "RLUIPA's equal terms provision does not require a finding that the alleged disparate treatment be between two uses similarly situated in all relevant respects." The County responds, and we agree, that the School is simply not a valid comparator here because the "rezoning" process is an entirely different form of relief from obtaining a "variance."

26

In Konikov, the plaintiff brought an as-applied Equal Terms challenge to

zoning regulations that prohibited a rabbi from conducting thrice-weekly

"Chabad" meetings in his residence.[10]  The plaintiff contended that the

municipality discriminatorily applied a zoning regulation requiring a special

exception for religious and social organizations located in a certain district.  The

plaintiff presented evidence that  the municipality required religious assemblies

meeting thrice-weekly in a rabbi's home to apply for a special permit, but did not

require a permit to conduct similarly frequent in-home secular assembly meetings.

Id. at 1327.  The Konikov Court framed its as-applied Equal Terms analysis this

way:

> Even though the Code, on its face, treats all of the relevant
> comparable groups the same . . .  If, as here, the [municipality] deems
> a group that meets three times per week a religious organization, but
> does not consider a group having comparable community impact a
> "social organization," that is a violation.

Id. (emphasis added).  The Court went on to compare the government's treatment

of religious and nonreligious organizations, and concluded that it violated the

Equal Terms provision because "[g]roups that meet with similar frequency are in

violation of the Code only if the purpose of their assembly is religious." Id. at

---

[10] Chabad "refers . . .  to a particular movement/philosophy/denomination within Orthodox Judaism that emphasized certain mystical teachings, as well as outreach and education in the Jewish world." Konikov, 410 F.3d at 1320 n.2.

1329 (emphasis added). Accordingly, we reversed the district court's grant of summary judgment and held that the plaintiff presented sufficient evidence to prove an as-applied Equal Terms violation.

Thus Konikov stands for the proposition that a neutral statute's application may violate the Equal Terms provision if it differentially treats similarly situated religious and nonreligious assemblies.[11] 410 F.3d at 1327-29; cf. Campbell, 434 F.3d at 1314 ("[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." (internal quotation marks omitted)). A plaintiff bringing an as-applied Equal Terms challenge must present evidence that a similarly situated nonreligious comparator received differential treatment under the challenged regulation. If a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment, and the plaintiff has failed to meet its initial burden of proof. See 42 U.S.C. § 2000cc-2(b).

With this in mind, we turn to the question of whether Primera presented a similarly situated comparator. Primera says that it was similarly situated with the

---

[11] Although Primera relies on our decision in Midrash for the proposition that, for Equal Terms purposes, non-religious comparators need not be similarly situtated to the religious plaintiff, its reliance is misplaced. Midrash involved a facial Equal Terms challenge, 366 F.3d at 1230, while Konikov, decided an as-applied Equal Terms challenge by engaging in a similarly situtated analysis. 410 F.3d at 1326-28. In deciding the as-applied Equal Terms claim before us, we are therefore guided more by Konikov than by Midrash.

28

School, but we disagree.  Primera and the School are not similarly situated because, notably, they sought markedly different forms of zoning relief, from different decision-making bodies, under sharply different provisions of local law.

To begin with, rezoning and variance plainly have different purposes.  As Primera's own expert testified at trial, a variance is

> a legal procedure whereby [the Board of Adjustment] gives relief . . . to individual property owners where it becomes impractical or there is a hardship that surrounds the particular use of property.  Zoning codes can't be designed to meet every particular piece of property that they zone, so, therefore, the variance procedure is a commonly acceptable form of giving individual relief to a specific property owner based on specific set of conditions and standards applicable only to that location.

(emphasis added).  Since a variance is meant to alleviate a particular owner's hardship, it does not alter the property's zoning classification; it merely grants the present owner a right to deviate from the general rule.

By contrast, rezoning is not meant to alleviate a particular landowner's hardship; rather, it is a general adjustment of the zoning scheme that affects the rights of all future landowners.  As Primera's expert explained, rezoning "chang[es] . . . the map portion of the property rights. . . . The rights to the property."  And because rezoning is a general adjustment of the zoning scheme, the County takes "substantially more time to review the details of what the impact would be and if it would be appropriate for this location."

29

Moreover, different decision-making bodies within the County government decide whether to grant rezonings or variances: a party seeking to rezone its property petitions the Zoning Board, BCZC § 39-26,  while a party seeking a variance applies to the Board of Adjustment, BCZC § 39-35.   These wholly different decision-making bodies are guided by different standards as well, and there is a different application and approval process for rezoning versus a variance.

For example, the Zoning Board conducts a public hearing on a request for rezoning after providing due notice.  BCZC § 39-27.  The Zoning Board then formulates a recommendation, taking into consideration the criteria discussed below and comments received during the public hearing.  The Zoning Board may defer the matter, recommend a less intensive zoning classification than requested, recommend approval, or recommend denial. BCZC § 39-29.  The Zoning Board's recommendation then goes to the County Commission for final approval or denial. BCZC § 39-30.  In sharp contrast, a party seeking a variance applies to the Board of Adjustment. BCZC § 39-35.  The County zoning staff review any variance application, and present a recommendation to the Board of Adjustment, which must then conduct a public hearing.  After the public hearing the Board of Adjustment decides whether to grant the variance.

30

While there is some overlap in the criteria that govern the decision to rezone or grant a variance -- in both instances, the decision-maker will consider whether the relief is consistent with the general intent and purpose of the zoning code, and whether there exists changed or changing conditions which make approval of the request appropriate, BCZC §§ 39-28, 39-40 -- these similarities are slight in comparison to the pronounced differences in the criteria governing variance and rezoning decisions. Thus, for example, when deciding whether to rezone a property, the Zoning Board considers the following factors, which the Board of Adjustment does <u>not</u> consider when deciding on a variance: (1) whether there exists an error or ambiguity which must be corrected; (2) whether the request is consistent with the densities, intensities, and general uses set forth in the Broward County Comprehensive Plan and Land Use Element Map; (3) whether the request will protect, conserve, or preserve environmentally critical areas and natural resources; (4) whether the request will place an undue burden on existing infrastructure and whether capacity exists for any projected increase that may be generated; and (5) whether the permitted uses in a requested rezoning are compatible with existing and proposed uses in the general vicinity; except, however, nonconforming uses of neighboring lands, structures, or buildings shall not be considered as support for approval of any request. BCZC § 39-28.

31

Conversely, the Board of Adjustment must consider the following criteria in deciding whether to grant a variance, which the Zoning Board does not consider at all in deciding whether to rezone property: (1) whether there are unique and special circumstances or conditions applying to the property in question, or to the intended use of the property, that do not apply generally to other properties in the same district; (2) whether any alleged hardship is not self-created by any person having an interest in the property or is the result of mere disregard for, or ignorance of, the provisions of the Code; (3) whether strict application of the provisions of the Code would deprive the petitioner of reasonable use of the property for which the variance is sought; and (4) whether the variance proposed is the minimum variance which makes possible the reasonable use of the property. BCZC § 39-40.

In addition to the differences apparent from the BCZC's terms, Primera itself acknowledges important differences between a variance and rezoning, and between Primera and the School: "Whether a property owner seeks a variance versus a rezoning is primarily dependent upon the size of the parcel and the future anticipated uses of the site. Primera's property is less than one acre in size in contrast to the Prep School's current size of nearly 70 acres." This neatly describes one of the powerful reasons the School is an inapt comparator: its property is

seventy times as large as Primera's. Nor, tellingly, does Primera allege that any other small property owner would be granted the same zoning relief as a property owner with seventy times as much land. Cf. Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003) ("Whatever specific difficulties [plaintiff church] claims to have encountered, they are the same ones that face all [land users]. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them." (alterations in original) (quoting Love Church v. City of Evanston, 896 F.2d 1082, 1086 (7th Cir.1990)).

Viewed in this light, it is abundantly clear, as the district court found, that Primera failed to establish a prima facie Equal Terms violation because it introduced no evidence that the County applied the BCZC in a manner that "subtly or covertly depart[ed] from requirements of neutrality and general applicability." Midrash, 366 F.3d at 1232. The evidence Primera adduced regarding its treatment and the School's treatment is consistent with the County's neutral application of different zoning regulations. Primera's evidence establishes only that the School received different treatment, not unequal treatment.

This conclusion is consonant with our recent holding in the Equal Protection context that "projects which seek different types of variances are not

similarly situated." Campbell, 434 F.3d at 1314. Cf. E & T Realty v. Strickland, 830 F.2d 1107, 1109 (11th Cir. 1987) ("Different treatment of dissimilarly situated persons does not violate the equal protection clause."); Lighthouse Inst. for Evangelism Inc. v. City of Long Branch, 100 Fed. Appx. 70, 77 (3d Cir. 2004) (holding that the plaintiff failed as a matter of law to establish a prima facie violation of RLUIPA's Equal Terms provision because "the Mission . . . failed to produce evidence to support its contention that the secular assemblies it identified were actually similarly situated such that a meaningful comparison could be made.").

The bottom line, fatal for Primera's statutory claim, is that RLUIPA's Equal Terms provision requires equal treatment, not special treatment. Midrash, 366 F.3d at 1231-32; Civil Liberties for Urban Believers, 342 F.3d at 762 ("[N]o . . . free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise."); cf. Lukumi, 508 U.S. at 533; Smith, 494 U.S. at 886. And without identifying a similarly situated nonreligious comparator that received favorable treatment, Primera failed to establish a prima facie Equal Terms violation.[12] The result in this case might be different if the Church had

---

[12] Although Primera argues that the district court made certain erroneous factual findings related to the timing of the School's rezoning requests, we need not reach that issue because Primera concedes it did not seek the same zoning relief as the School.

been denied a request for rezoning -- at the very least it would have afforded a reasonable basis for comparison -- but on these facts, the Church's Equal Terms claim plainly fails.[13]

Accordingly, we reverse the district court's dismissal of Primera's section 1983 claims and remand for further proceedings consistent with this opinion, but we affirm the district court's entry of final judgment, after trial, on Primera's Equal Terms RLUIPA claim.[14]

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

[13] The County also contends that Primera failed to offer evidence supporting the fourth element of an Equal Terms violation: the secularity of its comparator assembly. Although such proof is unquestionably required to support an Equal Terms claim, 42 U.S.C. § 2000cc(b)(1), we need not consider the sufficiency of Primera's evidence on this element because we have already decided that Primera failed to support the "less than equal terms" element of its prima facie case. 42 U.S.C. §§ 2000cc(b)(1), 2000cc-2(b).

[14] The County filed a Notice of Cross-Appeal challenging the constitutionality of RLUIPA and FRFRA's "substantial burden" provisions, but expressly abandoned its cross-appeal in its Answer Brief. Accordingly, the County's cross-appeal is DISMISSED.