# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 10, 2011

Lyle W. Cayce
Clerk

No. 10-50035

THE ELIJAH GROUP, INC.,

Plaintiff-Appellant

v.

THE CITY OF LEON VALLEY, TEXAS,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, GARZA, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant The Elijah Group, Inc. ("the Church") sued the City of Leon Valley, Texas ("the City"), alleging that the City's prohibition of the Church from performing religious services on certain properties violates the Texas Civil Practice and Remedies Code, the Texas Religious Freedom Restoration Act (TRFRA), the federal Religious Land Use and Institutionalized Persons Act (RLUIPA), and both the Texas and U.S. constitutions. After both parties filed motions for summary judgment, the district court denied the Church's motion and granted the City's, holding that the City did not violate any of the statutes or either constitution relied on by the Church. We disagree with the district court as to one of the Church's RLUIPA claims and hold that the

No. 10-50035

City's imposition of its land use regulation violates the Equal Terms Clause of that statute.

## I. FACTS & PROCEEDINGS

### A. Facts

The City is a relatively small municipality that is landlocked by the City of San Antonio. Until March 2007, the City had maintained a zoning code that allowed churches to obtain Special Use Permits (SUPs) to operate in business zones designated "B-2." At that time, however, the City amended its zoning code for the announced purpose of stimulating the local economy by creating a retail corridor on Bandera Road. That roadway through the City is lined primarily with B-2 properties. The ordinance's 2007 amendments both reclassified a number of B-2 uses and eliminated the right of churches to obtain SUPs in B-2 zones. The City thereby effectively excluded churches entirely from B-2 zones and relegated them to B-3 zones, which are designated for commercial uses with larger space requirements. By contrast, the City preserved the right of some similarly nonretail but nonreligious institutions to obtain SUPs in B-2 zones.

In January 2008, almost a year after the zoning ordinance was amended, the Church entered into a contract to buy a property on Bandera Road that was zoned B-2. The contract was contingent on the property owner successfully petitioning the City to rezone the property from a B-2 to B-3 so that the Church could occupy the property without restriction in accordance with the amended ordinance. When the City denied that rezoning request, the Church nevertheless agreed to lease the property from the owner until the zoning issue could be resolved.

Despite generally zoning "churches" as B-3s, the City permitted the Church to use the B-2 property for specified nonreligious activities. For example, the Church obtained a Certificate of Occupancy from the City to allow day care services on the B-2 property, but the certificate provides that "[t]he authorized

No. 10-50035

use does not include any church use or any use which is inconsistent with the B-2 zoning classification." Therefore, when the Church later began to hold religious services on that B-2 property, the City obtained a temporary restraining order (TRO) against such activity as violative of the zoning ordinance. Although the TRO has since expired, the City has declined to cite the Church until this lawsuit is resolved.

## B. Proceedings

The Church filed suit against the City in state court challenging the amended ordinance's validity and constitutionality under various state and federal laws, including the RLUIPA. The City removed the case to federal court, and the parties filed cross-motions for summary judgment. At the request of the district court, a magistrate judge issued a report, which recommended that the court grant the City's motion for summary judgment and dismiss the Church's motion. The district court adopted the magistrate judge's report in full and entered the recommended judgment in favor of the City, dismissing all of the Church's claims. The Church timely filed a notice of appeal, challenging only the district court's dismissal of its claims under the Equal Terms and Substantial Burden Clauses of the RLUIPA and under the TRFRA.

## II. ANALYSIS

## A. Standard of Review

We review a district court's summary judgment disposition de novo, applying the same legal standards as the district court.[1] The district court appropriately grants a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In our review, we may only consider the summary

---

[1] *United States v. Caremark, Inc.*, Nos. 09-50727, 09-51053, 2011 WL 653183, at *5 (5th Cir. Feb. 24, 2011) (citation omitted).

[2] FED. R. CIV. P. 56(a).

No. 10-50035

judgment record that was before the district court, and we must view that evidence in the light most favorable to the non-moving party.[3]

## B. The Equal Terms Clause

The Equal Terms Clause of the RLUIPA ("the Clause") states:

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.[4]

When we focus on the text of the Clause, we read it as prohibiting the government from "imposing," i.e., enacting, a facially discriminatory ordinance or "implementing," i.e., enforcing a facially neutral ordinance in a discriminatory manner. Here, issue is not taken with the City's implementation of the zoning ordinance as to the Church; rather, the Church makes a *facial* challenge to the ordinance's treating "churches" less favorably than other nonretail, nonreligious institutions.

In prohibiting the government from treating a religious institution "on less than *equal* terms with *a nonreligious assembly or institution*," the Clause by its nature requires that the religious institution in question be compared to a nonreligious counterpart, or "comparator." Since the enactment of the RLUIPA, four circuits have constructed different tests for applying the Clause, each with varying determinations of which nonreligious assemblies and institutions are proper comparators to the religious assembly or institution that brings the claim.

The Eleventh Circuit determines comparators based on whether the challenged ordinance is facially neutral or facially discriminatory.[5] If the

---

[3] *Caremark*, 2011 WL 653183, at *5 (citations omitted).

[4] 42 U.S.C. § 2000cc(b)(1).

[5] *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1308 (11th Cir. 2006).

4

No. 10-50035

ordinance is facially discriminatory, *any* nonreligious assembly or institution—broadly defined as a "company of persons collected together in one place" or an "establishment"—can be a comparator.[6] Under that reading, virtually every facially discriminatory ordinance violates the Equal Terms Clause. The Eleventh Circuit further recognizes, however, that a violation of the clause is "not necessarily fatal to the land use regulation."[7] It does this by extra-statutorily engrafting strict scrutiny review onto its test.[8] As for ordinances that are facially neutral, however, the Eleventh Circuit classifies claims under the Clause as either (1) those that challenge ordinances of "general applicability" but that "nevertheless target[] religion through a 'religious gerrymander'"[9] or (2) those that challenge "*discriminatory application*."[10] When alleging "religious gerrymander," a religious plaintiff must show that "the challenged zoning regulation separates permissible from impermissible assemblies or institutions in a way that burdens almost only religious uses"[11]—thus assessing the treatment of the religious plaintiff relative to all other nonreligious occupants. When alleging *discriminatory application*, however, a religious plaintiff must show that "a *similarly situated* nonreligious comparator received differential treatment under the challenged regulation."[12]

The Third and Seventh Circuits, in contrast, do not distinguish claims

---

[6] *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1230-31 (11th Cir. 2004).

[7] *Primera Iglesia*, 450 F.3d at 1308.

[8] *See id.*

[9] *Id.* at 1309 (citation omitted).

[10] *Id.* at 1310 (emphasis in original).

[11] *Id.* at 1309 (internal quotation marks omitted).

[12] *Id.* at 1311 (emphasis in original).

based on the nature of the zoning ordinance but apply the same test when addressing all claims under the Clause. The Third Circuit stated that "a regulation will violate the Equal Terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to *the regulatory purpose*."[13] The Seventh Circuit alternatively has announced a more "objective" test, viz., that a zoning ordinance violates the Clause if it treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution that is similarly situated as to "accepted zoning *criteria*."[14]

Most recently, the Second Circuit addressed a claim under the Clause raised by a church that was prohibited from operating catering services when a hotel in the same zone was not.[15] Although the court attempted to avoid choosing among the other three circuits' tests, it concluded that the hotel was a valid comparator to the church because "the Church's and the hotels' catering activities [are] *similarly situated with regard to their legality* under [the City's] law."[16] In other words, the Second Circuit first determined whether the two parties' activities should both be "legal" under the zoning ordinance at issue and then looked to whether the city treated the similarly "legal" religious and nonreligious institutions on equal terms. The court ultimately concluded that the city's imposition of the ordinance violated the Clause because "the formal differences the City asserts cannot protect its course of conduct and [ ] the

---

[13] *Lighthouse Inst. for Evangelism v. City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007) (emphasis in original).

[14] *River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, 611 F.3d 367, 371 (7th Cir. 2010) (en banc) (emphasis in original).

[15] *Third Church of Christ, Scientist, of New York City v. City of New York*, 626 F.3d 667 (2d Cir. 2010).

[16] *Id.* at 670 (emphasis added).

institutions are similarly situated for all functional intents and purposes relevant here."[17] Even if unintentionally, the Second Circuit thus has created a fourth test—somewhat combining the Third and Seventh Circuits' tests—which identifies a comparator that is similarly situated for all "functional intents and purposes" of the regulation.

In the instant case, the Church urged the district court to apply the Third Circuit's test. The magistrate judge did so—considering the zoning ordinance's regulatory purpose of "creat[ing] a retail corridor along Bandera Road"—and recommended dismissing the Church's claim under the Clause because "[t]he Church ha[d] not identified a non-religious assembly which is treated more favorably than a religious assembly in creating a retail corridor." On appeal, the Church asserts that the district court should have applied the Eleventh Circuit's test to what the Church claims is a facially discriminatory zoning ordinance. The Church insists that the district court erred in refusing to invalidate the City's ordinance for differentiating between religious and nonreligious assemblies *and* for the ordinance's failure to pass strict scrutiny review.

We turn first to the City's zoning ordinance. In articulating the reasoning behind and criteria to be used for creating the retail corridor on Bandera Road, the text of the ordinance does not mention religion. The City's real problem lies in the ordinance's "Permitted Use Table,"[18] which lists many types of buildings by use and then specifies the zone or zones in which each is or is not permitted. Specifically, the use table notes that "Churches" are not allowed in B-2 zones *at all*, but that many nonreligious, *nonretail* buildings, e.g., "Club or Lodge (*private*)," are allowed to request SUPs and, if granted, to occupy a B-2 zone. Try

---

[17] *Id.* at 668.

[18] The "Permitted Use Table" is part of the ordinance itself, as clarified at oral argument.

as we may, we cannot reconcile the ordinance's facial treatment of a church differently than a private club in light of the way that B-2 zones are defined.

In assessing the City's ordinance under the Clause, we conclude that the Clause does require the Church to show more than simply that its religious use is forbidden and some other nonreligious use is permitted. The "less than equal terms" must be measured by the ordinance itself and the criteria by which it treats institutions differently. When we analyze the City's ordinance within this framework, we are convinced that it is invalid because it prohibits the Church from even applying for a SUP when, e.g., a nonreligious private club may apply for a SUP despite the obvious conclusion that the Church and a private club must be treated the same, i.e., on "equal terms" by the ordinance, given the similar non–B-2 nature of each.[19]

At bottom, the ordinance treats the Church on terms that are less than equal to the terms on which it treats similarly situated nonreligious institutions. We conclude therefore that the imposition of the City's ordinance violates the RLUIPA's Equal Terms Clause.[20]

## III. CONCLUSION

For the foregoing reasons, the district court's order granting the City's motion for summary judgment and denying the Church's motion for summary judgment is reversed, and the case is remanded for further proceedings consistent with this ruling.

REVERSED and REMANDED.

---

[19] This analysis should not be interpreted as necessarily adopting any of the tests heretofore adopted by the other circuits.

[20] Because we hold that the City's ordinance violates the Equal Terms Clause, we need not and therefore do not reach the Church's claims brought under the Substantial Burden Clause and the TRFRA.