[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 17, 2012
JOHN LEY
CLERK

_____

No. 11-11910
_____

D. C. Docket No. 2:09-cv-00233-AAK


LONG-LEWIS STERLING WESTERN
STAR OF BESSEMER, et al.,

                                    Plaintiffs-Appellants,


versus


STERLING TRUCK CORPORATION, et al.,

                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 17, 2012)



Before CARNES and HULL, Circuit Judges, and ROTHSTEIN,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

Plaintiffs Long-Lewis Western Star of Bessemer and Long-Lewis Sterling Western Star of Hunstville (collectively, "Long-Lewis") sued Defendants Sterling Truck Corporation and Daimler Trucks North America, LLC (collectively, "DTNA"), for breach of contract and for violations of the Alabama Motor Vehicle Franchise Act ("AMVFA"), Ala. Code §§ 8-20-1 to 8-20-14, and the federal Automobile Dealers' Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221 to 1226. The district court granted summary judgment to Defendant DTNA on all claims. After review and oral argument, we affirm.

First, we conclude that the district court correctly determined that Defendant DTNA had not terminated the Sales and Service Agreement by which Plaintiff Long-Lewis operated its Sterling Trucks franchise. Specifically, Long-Lewis did not present evidence sufficient to create an issue of fact as to termination. Because DTNA did not terminate Plaintiff Long-Lewis's franchise, we affirm the district court's grant of summary judgment to DTNA on Long-Lewis's claims under the AMVFA, Ala. Code. § 8-20-5, and the ADDCA, 15 U.S.C. § 1222.

Second, as to Long-Lewis's claims arising from the buy-one-to-get-one program, we conclude that the district court erred in relying on a definition of "coerce" supplied by a 2010 statutory amendment to the AMVFA because the definition was not enacted when DTNA created the buy-one-to-get-one program in

2

2006.  See Ala. Code § 8-20-3(1) (2010).  Because the 2006 version of the AMVFA did not define the term "coerce," we apply the common definition of the term.  See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1308 n.6 (11th Cir. 2006) ("Terms that are not defined in the statute . . . are given their ordinary or natural meaning." (quotation marks omitted)).  Black's Law Dictionary defines "coerce" as "[t]o compel by force or threat."  Black's Law Dictionary 294 (9th ed. 2009).  Similarly, Webster's Third New International Dictionary defines "coerce" as follows: "1: to restrain, control, or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation) . . . 2: to compel to an act or choice by force, threat, or other pressure."  Webster's Third New International Dictionary of the English Language, Unabridged 439 (1993).

Applying this common definition, we conclude that the buy-one-to-get-one program was not coercive because Long-Lewis voluntarily participated in the program and presented no evidence of any force, threat, or pressure (other than mere market forces) to participate in the program.  Accordingly, the district court properly granted summary judgment to Defendant DTNA on Long-Lewis's various claims stemming from the buy-one-to-get-one program.

In light of the above, we also conclude that the district court properly granted summary judgment on Plaintiff Long-Lewis's remaining claims for breach of contract and for bad faith under the AMVFA.

**AFFIRMED.**

CARNES, Circuit Judge, concurring:

I concur in the majority opinion but write separately to emphasize that we are not deciding one issue involving the interpretation of the Alabama Motor Vehicle Franchise Act, Ala. Code § 8–20-4(1) (2006). That issue is whether the Act prohibits a manufacturer from tying the sale of one vehicle to the purchase of another or only prohibits tying when there is more coercion involved than that inherent in the tie itself.

The Act lists some unfair trade practices in § 8-20-4(1). The infinitive phrase before the colon preceding that list contains a coercion element or requirement ("to coerce or attempt to coerce any motor vehicle dealer"). Ordinarily, words preceding a colon apply to the entire list of items that follow the colon, which would indicate that all of the conduct that is described thereafter in § 8-20-4(1) is prohibited only if it is coercive.

It may be, however, that the "or to require" clause, which is the last forty-one words of § 8-20-4(1)(a), is an anti-tying provision that operates free of the coercion element. That clause may be free of the coercion requirement because it does not make sense to say that "any manufacturer" must not "coerce . . . or to require a motor vehicle dealer to accept, buy, order or purchase" any items in order

to obtain any other items.   But that is exactly what the statute says if the coercion element is read to apply to the "or to require" clause at the end of § 8-20-4(1)(a).

Not only that, but if the coercion element is read to apply to the "or to require" clause, which is to the right of the semicolon, then that entire forty-one word clause will have no meaning.  It will have no meaning because everything that it will prohibit—coercive tying—is already prohibited by the first part of § 8-20-4(1)(a), the part to the left of the semi-colon.  There is a strong presumption against reading statutory language to be so redundant that it is meaningless.

This issue is interesting, or what passes for interesting when it comes to matters of statutory interpretation, but we do not decide it.  We do not decide it because counsel for the dealer, the appellant here, has insisted with all his might that the coercion element does apply to all of  § 8-20-4(1)(a), including the "or to require" clause, and that a tying requirement alone is not enough.  We have accepted his adamant concession and have decided the buy-one-to-get-one claim on the assumption that he is right—that he must establish coercion above and beyond that inherently involved in any tying arrangement.  I do not object to giving counsel the detriment of his concession, nor am I sure that we would decide the issue differently but for his concession.  I am sure, however, that whether the "or to require" clause of § 8-20-4(1)(a) prohibits all tying, or just prohibits tying in

6

which the coercion exceeds that necessarily inherent in the tie, is an issue for another day and another case. Perhaps that is just as well, because it is the kind of state law issue better decided by the state courts.