08-6022-cv
Third Church of Christ, Scientist, of New York City v. City of New York

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: September 20, 2010          Decided: December 1, 2010)

Docket No. 08-6022-cv

───────────────────────────

THIRD CHURCH OF CHRIST, SCIENTIST, OF NEW YORK CITY,

*Plaintiff-Appellee*,

– v. –

THE CITY OF NEW YORK and PATRICIA J. LANCASTER, in her official capacity as
Commissioner of the New York City Department of Buildings,

*Defendants-Appellants.*

───────────────────────────

Before: CALABRESI, KATZMANN, CHIN, *Circuit Judges*.

Pursuant to the equal-terms provision of the Religious Land Use and Institutionalized

Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.*, the district court (Batts, *J.*) granted

Plaintiff-Appellee Church's motion for a permanent injunction prohibiting the City from

restricting the Church's use of its facility for private, catered events.  The court did this on the

ground that the City allows secular institutions in the Church's neighborhood to conduct

substantially similar events.  Contending that the Church and the secular institutions are not

similarly situated, the City urges us to dissolve the injunction.  We AFFIRM.

JOHN R. CUTI, Davis Wright Tremaine, LLP (Victor A. Kovner & Monica Pa, *on the brief*), New York, N.Y., *for Plaintiff-Appellee.*

RONALD E. STERNBERG, of counsel (Leonard Koerner & Ave Maria Brennan, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, N.Y., *for Defendants-Appellants.*

———————————————————————

CALABRESI, *Circuit Judge*:

The district court (Batts, *J.*) issued a permanent injunction pursuant to the equal-terms provision of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.*, prohibiting the City from restricting Plaintiff-Appellee Church's use of its facility for private, catered events. In so doing, it held that the City allows secular institutions in the Church's neighborhood to conduct the same types of events. The City urges us to dissolve the injunction because, it claims, the Church and the secular institutions are not similarly situated. Finding that the formal differences the City asserts cannot protect its course of conduct and that the institutions are similarly situated for all functional intents and purposes relevant here, we disagree with the City and AFFIRM.

## Background

In the winter of 2006, the Third Church of Christ, Scientist ("the Church"), located at the corner of Park Avenue and 63rd Street in Manhattan, began to look for ways to renovate its 80 year-old building and keep it in useable condition. Deciding that the small congregation could not raise the millions of dollars necessary on its own, the Church decided to contract with a catering company, the Rose Group. Under their agreement, the Rose Group would pay for the capital improvements to the building and for ongoing operating expenses. In exchange, it would receive the right to hold private functions in the church building. Prior to completing this

2

agreement, the Church sought permission in the form of an accessory-use permit[1] from the Manhattan Borough Commissioner of the Department of Buildings (DOB). Upon obtaining this initial permission in June 2006, the parties executed the contract, and the Rose Group began making the renovations and booking engagements. By early 2007, and before neighbor began complaining, the Rose Group had invested substantial sums in the construction, which was well under way.

In 2007, after receiving complaints from some of the Church's neighbors (to which the Church responded), the DOB issued a Notice of Intent to Revoke the previously given permit. That Notice stated that "the catering establishment is not an accessory use because . . . . it appears to be a principal commercial establishment at the premises." Letter from Phyllis Arnold, Deputy Comm'r, Legal Affairs and Chief Code Counsel, N.Y.C. Dep't of Bldgs., to R. Fulton MacDonald, Third Church of Christ, Scientist (Oct. 29, 2007) ("Intent to Revoke"). It gave the Church 10 days to submit evidence to the contrary, and decreed that "in no event" would DOB allow catered events at the Church after April 29, 2008. *Id.* On November 30, 2007, DOB issued a final revocation of the June 2006 permit.

The Church immediately sued the City under RLUIPA's equal-terms provision, which prohibits a "government [from] impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious

---

[1] New York City Zoning Regulations permit "accessory" uses of property. A use is accessory when, among other things, it is "clearly incidental to, and customarily found in connection with, [the] principal use," which is the "purpose for which . . . [the building is] designed, arranged, intended, maintained, or occupied." N.Y.C. Zoning Reg. 12-10. To hold large events in its building lawfully,, the Church needed to secure a permit of some kind—either an accessory-use permit or a series of ad-hoc temporary-use permits.

3

assembly or institution."[2] 42 U.S.C. § 2000cc(b)(1). To show unequal treatment, the Church presented evidence of secular institutions in the area offering similar catering and event services. Its two key comparators were the Beekman co-operative apartment building and the Regency hotel ("the hotels"), both of which are located in the same R-10 residential-zoned area and operate restaurants and event facilities in ways that allegedly were in violation of their certificates of occupancy. *See* N.Y.C. Dep't of Bldgs., Certificate of Occupancy No. 103613065T001 (COO for the Regency Hotel, noting "catering exclusively for the hotel residents and guests of the residents"); N.Y.C. Dep't of Bldgs., Certificate of Occupancy No. 106395 (COO for the Beekman, noting "catering exclusively for the hotel residents and guests of residents only").

Following an initial hearing, the district court issued a temporary restraining order on Dec. 7, 2007. This prevented the City from enforcing DOB's revocation of the permit and thereby allowed the Rose Group to continue holding catered events at the Church. The parties conducted discovery and submitted additional briefing. At oral argument before the district court in November 2008,[3] the City for the first time asserted that it had issued Notices of Violation (NOVs) to the Beekman and Regency for operating outside their COOs. The court concluded that a NOV, which does no more than start an administrative process the outcome of which is uncertain, is a very different type of sanction from the revocation of an accessory-use permit, such as that to which the Church was subjected. Accordingly, on Dec. 2, 2008, it imposed a permanent injunction barring the City from revoking the Church's permit as a violation of

---

[2] The Church also pleaded claims under the Equal Protection Clause and the First Amendment. As the District Court did not pass on these claims, neither do we.

[3] The Church had originally brought the Beekman's and the Regency's operations to the City's attention during the exchange of letters in early 2007.

RLUIPA. *Third Church of Christ, Scientist, of N.Y.C. v. City of New York*, 617 F. Supp. 2d 201 (S.D.N.Y. 2008). The City timely appealed.

## Discussion

We review the issuance of a permanent injunction for abuse of discretion. *Reynolds v. Giuliani*, 506 F.3d 183, 189 (2d Cir. 2007). A district court abuses its discretion when it rests its decision on an "erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks and citations omitted). The City argues that the district court erred both by treating the hotels as valid secular comparators to the Church and by determining that the hotels had been treated differently.

Determining whether a municipality has treated a religious entity "on less than equal terms" requires a comparison between that religious entity and a secular one. We have yet to decide the precise outlines of what it takes to be a valid comparator under RLUIPA's equal-terms provision, but three of our sister circuits have done so and have come to essentially the same result.

The Eleventh Circuit, in *Konikov v. Orange County*, 410 F.3d 1317, 1327 (11th Cir. 2005), explained that a secular comparator in an as-applied challenge should be selected by looking at "the evidence considered by" the governmental body imposing the restriction to ascertain the criteria it used in making its determination and then identifying a secular organization meeting those same criteria. In most zoning cases, because the government's focus is on the impact of the land use, the court should look for an organization "having comparable community impact" as the religious group. *Id.* In *Konikov*, the court compared a rabbi's use of

5

his home for thrice-weekly prayer meetings, which the county wanted to prohibit, with a cub scout troop holding meetings of a similar size and frequency, which the county admitted it would allow. *Id.* at 1328. Because both meetings would impact the community similarly, the county's treatment of the rabbi violated RLUIPA. *Id.* at 1329.

Along a similar line, though in evaluating a facial challenge, the Third Circuit held that the proper analysis focuses on the "impact of the allowed and forbidden [uses] . . . in light of the purpose of the regulation." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 265 (3d Cir. 2007). In *Lighthouse*, the court examined two city zoning schemes, each of which was used by the city to deny the church a permit to use its property for religious meetings. The court struck down the use of the older of the two schemes because the "Ordinance's aims [were] not well documented" and it was unclear from the face of the rule how a church "would cause greater harm to regulatory objectives than an 'assembly hall,'" which was permitted. *Id.* at 272. The court, however, allowed the city to restrict the church's use under the newer "Plan," which had been enacted "to achieve redevelopment" of the area and create "a 'vibrant' and 'vital' downtown . . . district," because state law prohibited the issuance of liquor licenses near houses of worship, so if churches were allowed in the area, the desired mix of retail and nightlife would become impossible to achieve. *Id.* at 270–71 (internal quotations omitted).

Finally, the Seventh Circuit, in a recent en banc ruling addressing a facial challenge, adapted the Third Circuit's test, shifting the focus slightly from the government's subjective purpose in enacting the zoning law to the law's stated regulatory criteria, which it deemed more objective. *River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, 611 F.3d 367, 371 (7th Cir. 2010) (en banc). The court then upheld a zoning ordinance that prohibited all noncommercial uses, including churches as well as secular assemblies like "exhibition halls,

6

clubs, and homeless shelters," because it found that the ordinance's criterion—commercial use only—was reasonable and that it applied equally both to religious and to secular groups. *Id.* at 373.

The differences in the mechanism for selecting an appropriate secular comparator that these cases present need not concern us today. Though the Church raises interesting questions about whether the City's apparent criterion for determining whether a use is "accessory"— whether the use bears a proportional relationship in terms of frequency, intensity, and nature to the property's principal use, *see* Arnold Dep. 113:18–21, 119:23–120:6—is either objective or fair, especially when applied to a church, it suffices for our present purposes that the district court concluded the Church's and the hotels' catering activities were similarly situated with regard to their legality under New York City law. And so they are.

All three entities are located in the same R-10 residential zone, in the same neighborhood on the Upper East Side of Manhattan. Ave Maria Brennan Decl. ¶¶ 76, 80 (Feb. 8, 2008). The record establishes, and the City does not contest, that both the Church and the hotels were engaged in large-scale catering activities. *See* Appellants' Br. 12–13. The City claims, however, that the hotels' activities constituted an "accessory use" under the City's zoning regulations while the Church's did not. *Compare* Appellants' Br. 19, *with id.* at 21. But what the City seems not to appreciate is that under its own regulations, a land use is legal only if it both (1) meets the general zoning rules and (2) complies with the building's COO. *See* N.Y.C. Admin. Code § 28-201.1 ("It shall be unlawful to . . . use or operate any building . . . in conflict with or in violation of . . . the zoning resolution . . . ."); *id.* § 28-118.3.2 ("No change shall be made to a building . . . inconsistent with the last issued certificate of occupancy . . . ."). The Church's catering use was alleged to be impermissible under the first criterion; the hotels' catering was

allegedly prohibited under the second. In the current posture of this case, that is enough to make them similarly situated.

Resisting this conclusion, the City contends that because the hotels never sought permission for their catering activities, they are not similarly situated to the Church. In a formal sense, the City may be correct that the hotels and the Church were differently situated from this point of view. RLUIPA, however, is less concerned with whether formal differences may be found between religious and non-religious institutions—they almost always can—than with whether, in practical terms, secular and religious institutions are treated equally. *See* 42 U.S.C. §§ 2000cc (requiring that a municipality may not "impose *or implement* a land use regulation" in a discriminatory manner) (emphasis added); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty*, 450 F.3d 1295, 1308 (11th Cir. 2006) (noting that "a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious[,] assemblies or institutions" violates RLUIPA's equal-terms provision). And indeed, no court has held that the secular comparator's use need be identical to the religious entity's. *See Lighthouse Inst. for Evangelism, Inc.*, 510 F.3d at 264 (holding that a secular institution need not engage in precisely "the same combination of uses" as the church to be a valid comparator).

To bolster its argument that differing procedural postures render two organizations non-comparable for RLUIPA purposes, the City relies on the Eleventh Circuit's decision in *Primera Iglesia*. This reliance is, however, misplaced. *Primera Iglesia* concerned a small church that was denied a zoning variance from the county to use its property as a meeting hall and sought to compare itself with a much larger school, which had been granted rezoning to develop its property into an auditorium. In determining that the church and the school were not similarly situated, the court reviewed the difference between the two zoning processes and determined that

8

they involved (1) different decision-making bodies (2) applying different criteria (3) to achieve different ends. 450 F.3d at 1311–13. *Primera Iglesia* thus stands only for the proposition that organizations subject to different land-use *regimes* may well not be sufficiently similar to support a discriminatory-enforcement challenge. It lends no support to the much broader idea that organizations at different stages of the same procedural process (as is the situation before us today) cannot be compared. Because the Church and the hotels are both subject to the same zoning rules and, on the record before us, are both operating in violation of those rules, *Primera Iglesia* is not applicable.

But this does not end our inquiry. The question becomes whether it was unreasonable for the district court to conclude that the City responded differently to the allegations of non-conforming use made with respect to each entity. We hold that the district court's decision was well within the range of reasonableness. The Intent to Revoke issued to the Church could hardly be clearer in its prohibition: DOB would, "*in no event*," allow catering events to be held at the Church "beyond six (6) months from the date of this letter." Intent to Revoke (emphasis added). The City claims that this revocation merely put the Church in the same position as the hotels: in the absence of the injunction, were the Church to continue its catering activities, the City would then issue it a NOV, just as it did to the hotels. Yet we hardly think that a reasonable person would read this absolute prohibition as an invitation for the Church to continue its operations in open violation of the law.

Most notably, the City's revocation letter appears, under threat of sanction, to deny the Church the opportunity to hold *any* catering events, thus denying it the benefit of the accessory-use law altogether. *See* Arnold Dep. 129:9–10 (DOB chief counsel agreeing that its decision meant that "no events at all" could be held at the Church). Thus, by the plain terms of the City's

9

letter, the Church would be unable to secure a temporary-use permit to hold even a small catered reception for the wedding or baptism of one of its members—the type of event no one suggests would fail to qualify as an accessory use for a church. By flatly prohibiting the Church from even concededly accessory catering uses, the City has treated the Church "on less than equal terms with" the hotels, which it allows to continue to use their facilities in what the City— viewing its actions in the most favorable light—must consider "accessory" ways.

Furthermore, in contrast to the firm prohibition embodied in the Intent to Revoke, there is no evidence that the City ever threatened to shutter the catering facilities at either hotel,[4] and everyone agrees that the hotels have not ceased their catering operations since the inception of this suit (even though they, unlike the Church, have neither sought nor obtained injunctions to protect their operations). The City claims it was without authority to revoke the COOs of the hotels or order them to cease their non-conforming use by closing the restaurants. Appellant's Br. 20. But, as the Church points out, the City actually had a wide variety of enforcement mechanisms at its disposal, which it did not pursue. *See* N.Y.C. Admin. Code § 28-201.3(2), (4) (listing "[c]ivil judicial proceedings for the recovery of civil penalties or injunctive relief" and "[t]he issuance and enforcement of peremptory orders" as among the available sanctions for violations of the zoning laws and building code).

In finding that the district court did not abuse its discretion in issuing the permanent injunction on the record before it, we do not mean to imply that the City may not successfully move for the dissolution of the injunction by presenting new evidence to the district court

---

[4] The evidence about what the City did with regard to the hotels is less than complete. The City never included the alleged NOVs or evidence of any further action taken by the City regarding them in the record before either the district court or this panel. Additionally, no NOVs that match counsel's description of those allegedly issued in November 2008 appear in DOB's supposedly comprehensive online database.

demonstrating that the inequality of treatment has ceased or is, for other reasons of substance, non-discriminatory. Moreover, because we affirm the district court on this specific ground, we do not today consider whether the City's accessory-use rule treats some seemingly similar activities as "customary" and "incidental" to hotels and apartment buildings but not to houses of worship, and whether such a distinction, if it is indeed the rule, would violate RLUIPA or would be justified by substantive differences between the relevant secular and religious institutions.

## Conclusion

The district court's entry of a permanent injunction is hereby AFFIRMED.