[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 12, 2011
JOHN LEY
CLERK

No. 08-16788

_____

D. C. Docket No. 06-01583-CV-ORL-31-KRS

FIRST VAGABONDS CHURCH OF GOD,
an unincorporated association,
BRIAN NICHOLS,
ORLANDO FOOD NOT BOMBS,
an unincorporated association,
RYAN SCOTT HUTCHINSON,
BENJAMIN B. MARKESON,
ERIC MONTANEZ,
ADAM ULRICH,

Plaintiffs-Appellees-Cross Appellants,

versus

CITY OF ORLANDO, FLORIDA,

Defendant-Appellant-Cross Appellee,

NATIONAL LAW CENTER ON
HOMELESSNESS & POVERTY,

NATIONAL LEGAL FOUNDATION,

Amicus.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(April 12, 2011)

Before DUBINA, Chief Judge, TJOFLAT, EDMONDSON, CARNES, BARKETT, HULL, WILSON, PRYOR, MARTIN and BLACK, Circuit Judges.[*]

PRYOR, Circuit Judge:

This appeal presents the question whether a municipal ordinance that limits the number of feedings of large groups that any person or political organization can sponsor in centrally located parks violates the First Amendment. A political organization, Orlando Food Not Bombs, contends that an ordinance that, as applied, restricts the frequency of its feedings of homeless persons in any park within a two-mile radius of the City Hall of Orlando, Florida, violates the Free Speech Clause of the First Amendment. The City of Orlando enacted the ordinance to spread the burden that feedings of large groups have on parks and their surrounding neighborhoods. Orlando Food Not Bombs argues that it has a right under the First Amendment to conduct feedings of large groups in any park as often as it likes. We assume, without deciding, that the feeding of homeless

_____

[*]Judge Stanley Marcus recused himself and did not participate in this decision. Judge Susan Black continued to participate in this decision after she assumed senior status. 28 U.S.C. § 46(c).

persons by Orlando Food Not Bombs is expressive conduct protected by the First Amendment, but we uphold the ordinance of the City of Orlando both as a reasonable time, place, or manner restriction of speech and as a reasonable regulation of expressive conduct. The judgment of the district court is affirmed in part and reversed in part, and the permanent injunction against enforcement of the ordinance is vacated.

## I. BACKGROUND

Lake Eola Park, located in the heart of downtown Orlando, Florida, is the signature park of the City and is featured on the seal of the City. Lake Eola Park is also one of 42 parks located in the Greater Downtown Park District, which is the area within a two-mile radius of City Hall. Orlando, Fla., Code § 18A.01(24). Orlando has a total of 108 parks in the entire City.

In 2005, Orlando Food Not Bombs, a group of political activists dedicated to the idea that food is a fundamental human right, began distributing free food at Lake Eola Park every Wednesday at 5:00 p.m., and First Vagabonds Church of God, a religious organization of about 40 members, most of whom are homeless, began conducting weekly services that included group feedings at Lake Eola Park. The Church later moved its services to Langford Park, which is also in the Greater Downtown Park District. In 2008, Orlando Food Not Bombs added a second

3

weekly feeding at Lake Eola Park on Mondays at 8:00 a.m. The free feedings ordinarily attracted between 50 and 120 people. After Orlando Food Not Bombs began distributing food at Lake Eola Park, residents of the surrounding neighborhoods complained to the City about the conduct of people who disbursed into the neighborhoods after the feeding events.

In response to the complaints, the City held public hearings and enacted an ordinance to regulate feedings of large groups at central public parks. The ordinance required sponsors of feedings of large groups within the Greater Downtown Park District to obtain a permit, and the ordinance limited the number of permits that a permitee could obtain for any one park to two a year. Id. § 18A.09–2. The ordinance defined a "large group feeding" as "an event intended to attract, attracting, or likely to attract twenty-five (25) or more people[] . . . for the delivery or service of food." Id. § 18A.01(23).

The Mayor of Orlando, John Hugh Dyer Jr., testified that the ordinance was enacted as an attempt to "be fair to individual neighborhoods" by distributing the large group feedings among the various city parks. A city official testified that the ordinance "was primarily intended to help broaden the burden across downtown," and a city record established that the ordinance was enacted to make the burdens placed on public parks "more manageable with advance notice and regulation

4

through a permit system." Lisa Early, the Director of Families, Parks, and Recreation for the City, testified about the overuse of Lake Eola Park and explained that there were other parks with large green spaces that had the capacity to be used more often. Early also testified that the ordinance achieved the objective of lessening the burden placed on Lake Eola Park because it limited the number of large group feedings that any one group could sponsor and "[told] them, 'We need to make use of all of our parks and facilities and spread the burden around.'"

Orlando Food Not Bombs and four of its members, Ryan Hutchinson, Benjamin Markeson, Eric Montanez, and Adam Ulrich, and the Church and its pastor, Brian Nichols, together filed in the district court a complaint against the City of Orlando that sought injunctive and declaratory relief and damages. The Church alleged that the ordinance, as applied, violated the Florida Religious Freedom Restoration Act, Fla. Stat. § 761.01 et seq.; and that the ordinance, both facially and as applied, violated the Free Exercise Clause of the First Amendment. The Church and Orlando Food Not Bombs both alleged that the ordinance, facially and as applied, violated the Free Assembly Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Orlando Food Not Bombs also alleged that the ordinance, facially and as applied, violated

the Free Speech Clause of the First Amendment.

The district court granted summary judgment in favor of the City on the claims under the Due Process and Equal Protection Clauses, and the district court granted summary judgment against the facial challenge under the Free Speech Clause as without merit because the conduct regulated by the ordinance was not, on its face, expressive activity. After a two-day bench trial on the remaining issues, the district court granted a motion by the City for judgment on partial findings, Fed. R. Civ. P. 52(c), on the claims of the Church under the Florida Religious Freedom Restoration Act. The district court then entered judgment on the remaining claims in a written order. First Vagabonds Church of God v. City of Orlando, 578 F. Supp. 2d 1353 (M.D. Fla. 2008).

The district court ruled in favor of the Church on its claim under the Free Exercise Clause, in favor of Orlando Food Not Bombs on its as-applied claim under the Free Speech Clause, and in favor of the City on the claim under the Free Assembly Clause. Id. at 1362. The district court permanently enjoined the City from enforcing the ordinance. Id. The City, Orlando Food Not Bombs, and the Church appealed the respective rulings of the district court that were not in their favor with the exception of the Free Assembly claim, which was abandoned on appeal.

A panel of this Court affirmed in part, reversed in part, and vacated the injunction. First Vagabonds Church of God v. City of Orlando, 610 F.3d 1274 (11th Cir. 2010). The panel reversed judgment in favor of Orlando Food Not Bombs and the Church on the claims under the Free Speech and Free Exercise Clauses, and the panel affirmed the judgment in favor of the City on the claims under the Florida Religious Freedom Restoration Act and the Equal Protection and Due Process Clauses. Id. at 1285–92.

On August 31, 2010, we granted the petition for rehearing en banc filed by Orlando Food Not Bombs and vacated the panel opinion. First Vagabonds Church of God v. City of Orlando, 616 F.3d 1229 (11th Cir. 2010). We directed Orlando Food Not Bombs and the City to brief one issue: whether the ordinance as applied to Orlando Food Not Bombs violated the Free Speech Clause of the First Amendment. We later heard oral argument on that issue.

## II. STANDARD OF REVIEW

We review questions of law de novo. Gold Coast Publ'ns, Inc. v. Corrigan, 42 F.3d 1336, 1343 (11th Cir. 1994). "[W]e review the core constitutional facts de novo, unlike historical facts, which are measured only for clear error." Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011).

## III. DISCUSSION

7

The resolution of this appeal does not require us to determine whether the feeding of homeless persons by Orlando Food Not Bombs in public parks is expressive conduct entitled to protection under the First Amendment. We will assume, without deciding, that this conduct is expressive and entitled to some protection under the First Amendment. See Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 3068–69 (1984). But even when we assume that the feeding of homeless persons by Orlando Food Not Bombs is expressive conduct, we cannot conclude that the ordinance that regulates that conduct violates the Free Speech Clause of the First Amendment.

We need look no further than the decision of the Supreme Court in Clark to resolve this appeal. 468 U.S. 288, 104 S. Ct. 3065. In Clark, the Community for Creative Non-Violence had obtained a permit from the National Park Service to conduct a demonstration in Lafayette Park and the National Mall in Washington, D.C. Id. at 291, 104 S. Ct. at 3068. The Community planned to erect several tents as a symbolic statement about the plight of the homeless in the District of Columbia. Id. The National Park Service allowed the erection of the symbolic tents, but denied a request by the Community to allow participants in the demonstration to sleep in the tents. Id. at 292, 104 S. Ct. at 3068. The Park Service relied on a regulation that permitted camping only in campgrounds

8

designated for that purpose. Id. at 291–92, 104 S. Ct. at 3068. The Community complained that the regulation, as applied to the participants in the demonstration, violated the Free Speech Clause. Id. The Supreme Court assumed, without deciding, that sleeping in connection with the demonstration was expressive conduct protected to some extent by the First Amendment, but nonetheless upheld the regulation as applied to the Community by the Park Service. Id. at 293–94, 104 S. Ct. 3069.

The Supreme Court held that the prohibition of overnight sleeping in public parks, as a symbolic statement about the plight of the homeless, withstood constitutional scrutiny "either as a time, place, or manner restriction or as a regulation of symbolic conduct." Id. at 294, 104 S. Ct. at 3069. The regulation was valid as a reasonable time, place, or manner restriction because "the ban on sleeping[] [was] clearly [a] limitation[] on the manner in which the demonstration could be carried out." Id. That the Court assumed that sleeping was a form of expression did not change the analysis because "the Park Service neither attempts to ban sleeping generally nor to ban it everywhere in the parks." Id. at 295, 104 S. Ct. at 3070. The challenged regulation was a reasonable time, place, or manner restriction because it was content neutral, left open alternative channels of speech, id., and was narrowly focused on the substantial interest of the government in

9

"maintaining the parks in the heart of our Capital in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence," id. at 296, 104 S. Ct. at 3070.  The Supreme Court also explained that the regulation that prohibited overnight sleeping satisfied the four-part test of United States v. O'Brien, 391 U.S. 367, 377, 88 S. Ct. 1673, 1679 (1968).  Clark, 468 U.S. at 298–99, 104 S. Ct. at 3071–72.  There was no contention that a prohibition on overnight sleeping in public parks was beyond the constitutional power of the government to enforce, id.; the government had a substantial interest in conserving park property that was "plainly served by . . . measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties," id. at 299, 104 S. Ct. at 3072; that interest was unrelated to the suppression of expression, id.; and the incidental restrictions of the alleged freedoms under the First Amendment were no greater than necessary to further the interest of the government, id.

The Supreme Court rejected the reasoning of the Court of Appeals for the District of Columbia Circuit that the incidental restriction of the freedoms of the demonstrators under the First Amendment was greater than necessary because there were "less speech-restrictive alternatives that could have satisfied the Government interest in preserving park lands."  Id.  The Supreme Court described

10

the suggestion by the circuit court of alternative means of preserving the park lands as "represent[ing] no more than a disagreement with the Park Service over how much protection the core parks require or how an acceptable level of preservation is to be attained." Id. The Supreme Court explained that its decisions about the First Amendment do not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained." Id.

Even when we assume that the feeding of homeless persons is expressive conduct, the ordinance, as applied to Orlando Food Not Bombs, is a reasonable time, place, or manner restriction. The ordinance restricts feedings even less than the regulation in Clark restricted sleeping. Orlando Food Not Bombs can obtain two permits a year for each of the 42 parks in the Greater Downtown Parks District, which allows for a total of 84 group feedings a year at parks within a two-mile radius of the City Hall. The ordinance places no restrictions on the number of large group feedings Orlando Food Not Bombs can sponsor at any of the other 66 parks located outside the Greater Downtown Parks District. The City "neither attempts to ban [large group feedings] generally nor to ban [them] everywhere in the parks." Id. at 295, 104 S. Ct. at 3070. Orlando Food Not Bombs does not

11

contend that the ordinance is content based. The ordinance leaves open ample channels of communication; Orlando Food Not Bombs is not prevented by the ordinance from conducting as many political rallies, demonstrations, distributions of literature, or any other expressive activities as it likes at Lake Eola Park. The ordinance also narrowly furthers the substantial interest of the City in managing its parks and "be[ing] fair to individual neighborhoods" by spreading the burden of the large group feedings.

The ordinance is a valid regulation of expressive conduct that satisfies all four requirements of O'Brien, 391 U.S. at 377, 88 S. Ct. at 1679. First, Orlando Food Not Bombs does not contest that it is within the power of the City to enact ordinances that regulate park usage. Second, the City has a substantial interest in managing park property and spreading the burden of large group feedings throughout a greater area and those interests are plainly served by the ordinance. Third, the interest of the City in managing parks and spreading large group feedings to a larger number of parks is unrelated to the suppression of speech. Fourth, the incidental restriction of alleged freedoms under the First Amendment is not greater than necessary to further the interest of the City. We cannot "replace the [City] as the manager of [its] parks," nor decide "how much protection of park lands is wise and how that level of conservation is to be attained." Clark, 468 U.S.

12

at 299, 104 S. Ct. at 3072. The City is in a far better position than this Court to determine how best to manage the burden that large group feedings place on neighborhoods in the City.

After the district court directed the parties to file post-trial briefs in lieu of making closing arguments, the City argued at length that "Clark is particularly relevant . . . because of its facts," but the district court failed inexplicably to discuss the Clark decision in its final order. The district court acknowledged that the primary reason the City adopted the ordinance was "an effort to spread the impact of large group feedings among Orlando's parks." First Vagabonds Church of God, 578 F. Supp. 2d at 1360. The district court reasoned that, although "the City clearly has the right to regulate the use of its parks, this Ordinance does not do so" in a permissible manner because "whatever problems may exist, this Ordinance does nothing but move them around to be shared by other parks." Id. at 1361. The district court failed to explain why sharing the burden of large group feedings among a larger group of parks and neighborhoods is not a substantial governmental interest. The district court instead erroneously concluded, without analysis, that "[e]ven assuming that the Ordinance did further a substantial governmental interest, the restrictions placed on First Amendment freedoms are much greater than [those] which are essential." Id. The district court would have benefitted

13

from closer consideration of Clark, where the Supreme Court rejected the contention that, because there were "less speech-restrictive alternatives that could have satisfied the Government interest in preserving park lands," the restrictions placed on freedoms under the First Amendment were too great. Clark, 468 U.S. at 299, 104 S. Ct. at 3072.

The Supreme Court has made clear that "an incidental burden on speech is no greater than is essential, and therefore is permissible under O'Brien, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." United States v. Albertini, 472 U.S. 675, 689, 105 S. Ct. 2897, 2906 (1985). We have no doubt that the substantial interest of the City in spreading the burden of large group feedings among a larger number of parks would be achieved less effectively absent the ordinance. The Supreme Court has instructed us that "the validity of such regulations [of expressive conduct] does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests." Id. at 689, 105 S. Ct. at 2907.

## IV. CONCLUSION

The ordinance as applied to the feedings of homeless persons by Orlando Food Not Bombs does not violate the Free Speech Clause of the First Amendment.

14

This Court did not reconsider en banc sections II.B-E of our panel opinion in this appeal, and the result reached in those sections of the panel opinion is **REINSTATED**. <u>See</u> <u>First Vagabonds Church of God</u>, 610 F.3d at 1285–92. The decision of the district court is **AFFIRMED** in part and **REVERSED** in part, and the permanent injunction is **VACATED**.