[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————

No. 14-14334
Non-Argument Calendar
————————————————

D.C. Docket No. 8:14-cv-00954-JDW-AEP


NURA WASHINGTON BEY,

Plaintiff-Appellant,

versus

CITY OF TAMPA CODE ENFORCEMENT,
STEVE MATEYKA,
Code Enforcement Officer,

Defendants-Appellees.


————————————————

Appeal from the United States District Court
for the Middle District of Florida
————————————————


(April 8, 2015)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Nura Washington, Bey ("Washington"), pro se, appeals the district court's dismissal of her civil rights complaint, which alleged violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and of her constitutional rights under 42 U.S.C. § 1983.  After review, we affirm in part, and vacate and remand so that the district court can enter a new judgment dismissing certain claims without prejudice.[1]

## I.  BACKGROUND FACTS

Defendant Steve Mateyka is a code enforcement officer with the Defendant City of Tampa Code Enforcement.

Washington's complaint alleged these facts.  On August 27, 2013, Washington's husband encountered Defendant Mateyka, whose city vehicle was blocking Washington's driveway.  Believing Defendant Mateyka's conduct was harassing and intimidating, the Washingtons subsequently filed an ethics complaint against Defendant Mateyka.  The City of Tampa's Ethics Commission eventually concluded that there was no probable cause to believe that an ethics violation occurred.

---

[1]Contrary to the Defendants' argument, Washington's September 19, 2014 notice of appeal was timely filed within 150 days of the district court's July 25, 2014 dismissal order.  See Fed. R. App. P. 4(a)(7)(A)(ii) (requiring the appellant to file a notice of appeal within 150 days of the judgment or order if it was not set forth in a separate document as required by Fed. R. Civ. P. 58(a)).  Therefore, we have appellate jurisdiction.

2

On October 3, 2013, while the Washingtons' ethics complaint was still pending, Defendant Mateyka inspected some property Plaintiff Washington owned, known as Al Moroc Humanity Park, at 2113 North Freemont Avenue in the City of Tampa. Washington identifies herself as a "sovereign Moorish National," and she and her "fellow Moorish nationals" practice their Islamic faith every Sunday at Al Moroc Humanity Park. Washington placed a sign in the park, which she avers "displays [her] religious rights and the constitutional right to peaceful assembly." Defendant Mateyka cited Washington for displaying unpermitted signs, building without a permit, and failing to obtain a special use permit to operate a private recreational facility.

At an April 2, 2014 hearing regarding the citations, Washington made a "special appearance" to challenge the jurisdiction of the City's special magistrate, Alex Dunmire. Washington argued that as an "Indigenous/Aboriginal Free Moorish National" she was not a "person" within the meaning of the Florida Statutes. A code enforcement officer, not Defendant Mateyka, testified that the code violations were still present on Washington's property. Washington objected to Defendant Mateyka not being present so she could cross-examine him. Washington declined to present her own evidence or to enter a plea of guilty or not guilty, still contending that the special magistrate lacked jurisdiction over her as a Moorish National.

At the conclusion of the hearing, the special magistrate found Washington guilty of the code violations. Specifically, the special magistrate found:

> That the following violations of the City of Tampa Code are found to still exist: Failure to apply for a Special use to operate as a recreational facility. All signage must be permitted. Failure to obtain the proper permits and zoning approval. For compliance this will require everything that was built and installed to be removed from the property.

The special magistrate gave Washington until April 30, 2014 to correct the code violations, after which a fine of $100 per day would be imposed. The special magistrate authorized the city clerk to place a lien on all real property owned by Washington, except homestead property, if Washington failed to correct the code violations on time and to foreclose the lien if any amount remained unpaid after three months.

## B.    Washington's Complaint

As noted above, Washington's complaint named two defendants, Steve Mateyka, the code enforcement officer who originally inspected and cited Washington's property, and the City of Tampa Code Enforcement.[2] The complaint alleged violations of Washington's First, Fourth, and Ninth Amendment rights, stating that the Defendants were trying to "stop [her] from exercising a

---

[2]The district court concluded that the City of Tampa Code Enforcement, a department of the City of Tampa, was not a proper party and construed Washington's complaint as naming the City of Tampa, the legal entity capable of being sued under Florida law. Although Washington challenges this conclusion, we do not address it because, regardless of which entity is the proper party, Washington's complaint was properly dismissed for failure to state a claim.

4

fundamental right" to associate "with fellow Moorish nationals."  Washington also claimed that her due process rights were violated at the code enforcement hearing because she was unable to cross-examine Defendant Mateyka and because the special magistrate "never proved jurisdiction" and called the hearing a "quasi" hearing, and thus had no authority to issue the lien or determine Washington's guilt regarding the code violations.

Washington further alleged the Defendants violated RLUIPA by trying to "disband [her] fellowship by citing counterfeit ordinance violations and placing a lien on [her] properties."  Specifically, Washington alleged that, for purposes of RLUIPA: (1) the Defendants constitute a "government"; (2) Al Moroc Humanity Park is a "religious assembly or institution"; (3) Washington's use of Al Moroc Humanity Park is "religious exercise"; (4) Defendants "currently allow[ ] other religious and nonreligious assemblies and institutions to operate in residential districts without being subjected to any enforcement action for such violation"; (5) the "filing of violations and placing a lien against Nura Washington Bey and Al Moroc Humanity Park" is an "'application' of a 'land use regulation' that 'limits or restricts a claimants use or development of land (including a structure affixed to land)'"; (6) Defendants' "actions to prevent organized religious services from taking place on the property constitute the 'imposition or implementation' of a land use regulation" that treats Washington "on less than equal terms with a

5

nonreligious assembly or institution"; and (7) Defendants' "actions to prevent organized religious services from taking place on the Al Moroc Humanity Park property constitute the 'imposition or implementation' of a land use regulation that discriminates and continues to discriminate against Nura Washington Bey on the basis of religion . . . ."  The complaint requested nine million dollars in damages.

## II.  GENERAL PRINCIPLES

To survive a motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  For a claim to be facially plausible, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Id. (citation, brackets, and quotation marks omitted).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 679, 129 S. Ct. at 1950.  Further, although we must accept all factual allegations in the complaint as true, "we are

6

not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678, 129 S. Ct. at 1249-50 (quotation marks omitted).[3]

## III. WASHINGTON'S CLAIMS

### A.    First Amendment Claims Under § 1983

To state a claim for relief under § 1983, the plaintiff must allege sufficient facts to establish that (1) she was deprived of a federal right (2) by a person acting under the color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).[4] Washington's complaint alleged that the Defendants' actions in enforcing the City of Tampa's code violated her First Amendment rights to exercise her religion and to assemble.[5] At a minimum, to state a First Amendment claim, a plaintiff must allege that her First Amendment rights were impermissibly burdened in some way. See, e.g., GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1256

---

[3]We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiff. Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012). While we construe pro se pleadings liberally, "we do not have "license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted), overruled on other grounds by Iqbal, 556 U.S. 662, 129 S. Ct. 1937.

[4]Although Washington's complaint alleged the violation of several constitutional rights, it did not refer to 42 U.S.C. 1983. The district court properly construed Washington's constitutional claims as proceeding under § 1983. See GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1253 n.15 (11th Cir. 2012).

[5]Washington's complaint also alleged, without any elaboration, that the Defendants violated her Fourth and Ninth Amendment rights. These claims are wholly without merit, and district court's dismissal of them warrants no discussion.

(11th Cir. 2012) (freedom of religion); Bourgeois v. Peters, 387 F.3d 1303, 1316-17 (11th Cir. 2004) (freedoms of association, speech, and assembly).

Although Washington's complaint alleged that she was cited for violating several City of Tampa land use ordinances and was ordered to correct those violations or face fines and the possibility of a lien, she did not allege any facts showing how those actions burdened her religious or associational rights. Washington did not allege that she had applied for and was denied the permits, that she was not actually required by the ordinances to obtain the permits, or that she corrected the code violations prior to the code enforcement hearing. Indeed, at the code enforcement hearing, Washington did not dispute the existence of the code violations, opting instead to argue that her status as a Moorish National placed her outside the special magistrate's jurisdiction.

Instead, the gravamen of Washington's First Amendment claims, as alleged, appears to be that Washington is entirely exempt from local land use regulations by virtue of the First Amendment. Washington cites no authority to support such a proposition, and we could find none. Cf. First Vagabonds Church of God v. City of Orlando, Fla., 610 F.3d 1274, 1285-86 (11th Cir. 2010) (explaining that a neutral ordinance of general applicability that is rationally related to a legitimate governmental interest does not violate the Free Exercise Clause even if it has the incidental effect of burdening a religious practice), vacated, 616 F.3d 1229 (11th

8

Cir. 2010), reinstated in relevant part, 638 F.3d 756, 763 (11th Cir. 2011) (en banc).  As the district court noted, it appears from the face of the complaint that Washington merely needs to comply with the permitting process, like all property owners in the City of Tampa.[6]

## B.    Fifth Amendment Claim Under § 1983

Liberally construed, Washington's complaint also alleged that her Fifth Amendment due process rights were violated during the code enforcement proceedings because, inter alia, the special magistrate "had no authority to issue a lien . . . or make a determination of guilt."  On appeal, Washington continues to assert that the special magistrate was without authority or jurisdiction.

To state a procedural due process claim under § 1983, the plaintiff must allege: (1) the deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).

Assuming arguendo that a municipal proceeding conducted by a special magistrate who lacks jurisdiction constitutes "constitutionally inadequate process," Washington still has not stated a procedural due process claim.  This is so because, contrary to Washington's contention, the special magistrate in her case was authorized by Florida law to adjudicate code violations within the jurisdiction of

---

[6]Because we affirm the district court's dismissal on Rule 12(b)(6) grounds, we do not address its alternative ruling that the Defendants were entitled to qualified immunity.

the City of Tampa.  See Fla. Const. art. VIII, § 2(b); Fla. Stat. § 166.021(1) & (4) (conferring upon municipal governments all the governmental powers "to enable them to conduct municipal government, perform municipal functions, and render municipal services" and granting them the authority to "exercise any power for municipal purposes, except when expressly prohibited by law"); Fla. Stat. §§ 162.01-162.13 (authorizing municipalities to adopt a code enforcement system that gives special magistrates designated by the local government body the authority to hold hearings and assess fines against municipal code violators and impose liens on real property); City of Tampa Code § 9-1 (authorizing special magistrates to enforce the City of Tampa's code provisions or ordinances, including to impose fines and other non-criminal penalties).

Washington's complaint established that she is the owner of the property at 2113 North Freemont Avenue and that the property is within the City of Tampa. Thus, as a matter of law, the special magistrate had jurisdiction to adjudicate any code violations on Washington's property and assess fines against her if the violations were not corrected.  To the extent Washington contends that she is not subject to the City of Tampa's code or the jurisdiction of the special magistrate because she is a Moorish National, she does not cite any case from this Court, the United States Supreme Court, or the Florida courts supporting her argument, and we could find none.  Washington's reliance upon the 1787 Treaty of Peace and

10

Friendship between the United States and the country of Morocco and the Free Moorish Zodiac Constitution is unavailing.

## C.    RLUIPA

At the outset, we note that the district court concluded that Washington lacked standing to bring her RLUIPA claims.  Article III standing requires the plaintiff to establish (1) "an injury in fact or an invasion of a legally protected interest"; (2) "a direct causal relationship between the injury and the challenged action"; and (3) "a likelihood of redressability."  Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004).  In determining that Washington failed to allege an injury in fact, the district court seems to have conflated the standing requirements with the merits of Washington's RLUIPA claims.

Washington's complaint alleged that she was the owner of the property and that she was found guilty of violating several of the City's land use ordinances and threatened with fines and a lien.  Under our precedent, Washington's allegations sufficiently alleged standing to challenge the application of the City's land use ordinances to her property under RLUIPA.  See id. at 1223-24 (concluding that two congregations that had leased property to operate synagogues had standing to bring RLUIPA claims to challenge zoning ordinances because the town had already instituted enforcement actions in state court).

11

Although Washington has standing, her complaint failed to state RLUIPA claims. Washington's complaint alleged that the Defendants violated: (1) the "equal terms" provision of RLUIPA, 42 U.S.C. § 2000cc(b)(1); and (2) the nondiscrimination provision of RLUIPA, 42 U.S.C. § 2000cc(b)(2).[7]

Under RLUIPA's equal terms provision, governments are prohibited from implementing land use regulations in a manner that treats religious assemblies "on less than equal terms" with nonreligious assemblies or institutions. 42 U.S.C. § 2000cc(b)(1). "There are four elements of an Equal Terms violation: (1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution." Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty., 450 F.3d 1295, 1307 (11th Cir. 2006). There are both facial and "as applied" equal terms violations. See id. at 1308-10. Here,

---

[7]Washington's complaint did not explicitly allege that the Defendants imposed a "substantial burden" on her religious exercise, in a violation of 42 U.S.C. § 2000cc(a)(1). Nonetheless, the district court liberally construed Washington's complaint to include a substantial burden claim and concluded that the Defendants' requiring Washington to apply for permits was an incidental effect on Washington's religious exercise that was merely an inconvenience and not a substantial burden. See Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1323 (11th Cir. 2005) (stating that "requiring applications for variances, special permits or other relief provisions would not offend RLUIPA's goals").

On appeal, Washington's brief makes no mention of a violation of RLUIPA's substantial burden provision or the district court's ruling on that claim. Thus, Washington has abandoned any appeal of her substantial burden RLUIPA claim. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (citation omitted)).

Washington's complaint, liberally construed, did not allege a facial equal terms challenge.

Her complaint did contain an "as applied" claim, alleging that the Defendants' application of the City of Tampa's land use ordinances to her property violated RLUIPA's equal terms provision.[8]  Her complaint, however, made only a conclusory statement that the Defendants allowed "other religious and nonreligious assemblies and institutions to operate in residential districts" without being subject to enforcement actions.  The complaint did not identify any particular nonreligious assembly or institution or allege with any specificity how the Defendants' application of the City of Tampa's code to Washington's property resulted in her religious assembly being treated on less than equal terms.  Such vague and conclusory allegations are insufficient to state a claim for relief.  See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

As to the nondiscrimination claim, Washington's complaint was equally threadbare, making only the conclusory statement that the Defendants' "actions to prevent organized religious services from taking place on the Al Moroc Humanity Park property" constituted discrimination against her on the basis of religion.  The

---

[8]We note that it is an open question in this circuit whether the jurisdictional provisions of § 2000cc(a)(2) apply to RLUIPA claims asserted under § 2000cc(b). See Konikov, 410 F.3d at 1324.  We need not resolve the issue here because the third jurisdictional prong of § 2000cc(a)(2) is satisfied in any event. See 42 U.S.C. § 2000cc(a)(2)(C) (requiring the RLUIPA violation to have occurred "in the implementation of a land use regulation or system of land use regulations, under which a government makes . . . individualized assessments of the proposed uses for the property involved").

complaint does not allege any facts supporting this assertion or explain how requiring Washington to apply for permits before placing a sign, building a structure, or operating a private recreational facility on the property prevented her from conducting organized religious services.  Without further factual allegations elaborating upon how the Defendants' code enforcement actions constituted discrimination on the basis of religion, Washington's complaint failed to state a nondiscrimination claim under RLUIPA.  See id.

### III.  CONCLUSION

For all the forgoing reasons, we affirm the district court's dismissal of Washington's complaint for failure to state a claim.[9]  We note, however, that where a more carefully drafted complaint might state a claim, a pro se plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (quotation marks omitted).  As explained above, the deficiencies with respect to Washington's First Amendment free exercise and association claims and her RLUIPA equal terms and nondiscrimination claims are that she failed to allege sufficient factual matter and relied on conclusory allegations.  Further, it is not

---

[9]On appeal, Washington argues that the district court abused its discretion by referring a motion to a magistrate judge without her consent.  However, the record reflects that the district court never referred any motions to a magistrate judge and issued the two orders entered in the case.  Washington also complains that the district court changed her jury demand and did not send the order dismissing her complaint to her correct mailing address.  Any alleged error was harmless given that Washington filed a timely notice of appeal and has not shown any prejudice.  See Fed. R. Civ. P. 61.

14

apparent from the record that Washington could not allege facts that would state a plausible First Amendment or RLUIPA claim.  See id. (providing that a district court is not required to permit amendment where it would be futile).  Accordingly, we vacate the district court's judgment and remand with instructions to dismiss Washington's free exercise and association claims under the First Amendment and her equal terms and nondiscrimination claims under RLUIPA without prejudice. All of Washington's other claims remain dismissed with prejudice.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**